Tilghman C. J.
The plaintiff obtained a verdict in this case, and the defendants have moved for a new trial, because the verdict, as they allege, was against law and against the evidence. The defendants make two points. 1. That the loss happened by a breach of the blockade of Monte Video. 2d, That the plaintiff’s warranty of American property was broken. They also except to the opinion of the Judge before whom the cause was tried, in admitting the Captain of the Rolla (the plaintiff’s ship) as a witness for the plaintiff, to prove that Monte Video was not blockaded. The Captain had no release from the plaintiff, and his testimony was objected to, on the ground of interest. He will be responsible to the plaintiff,, if through his misconduct the plaintiff fails to recover in this action. If the matter rested simply on that point, I do not see how the objection could be answered. But the witness may have been interested formerly, though not so at the time of trial. If he is answerable to the plaintiff, it must be for misconduct, which happened in the year 1806, so that when he was offered as a witness he was protected by the act of limitation. In answer to this, it has been said, that the act of limitation is not an extinguishment of the plaintiff’s cause of action. True, it is not, but it puts it in tbe defendant’s power to defeat it, and that is sufficient to take off his interest. If a witness is interested, and the party who produces him, offers a release, which the witness refuses to accept, his interest is no longer an objection, because it is owing to himself that he remains interested. On the same principle he ought not to be rendered incompetent by liability to an action, which he has the means of defeating; there is no reason to suppose, that his testimony will be influenced by the fear of such an action. I am of opinion, therefore, that he was a competent witness.
*133 The plaintiff warranted the property to be American, which no doubt, amounts to an engagement that it shall be accompanied by all those documents which neutrals may be called upon, by the belligerent powers, to produce. Those documents were not produced on the trial, but the plaintiff proved, that the property belonged to an American citizen. In determining what proof it is incumbent on the plaintiff to make, considerable regard should be had to the usual practice in such cases. In every insurance there is an implied warranty, that the vessel is sea-worthy. Yet the plaintiff is not put to the proof of sea-worthiness, in the first instance. Sea-worthiness is presumed, unless something occurs in the voyage which renders it doubtful, and then the plaintiff must prove it. It is said by Marshall,(a) in his Treatise on Insurance, that in case of a warranty, that the thing insured is neutral property, it is usual at the trial, to give general evidence of the truth of that warranty and leave it to the defendant to falsify it, or prove a breach or forfeiture of it. There is the more reason for this, as the ship’s papers are taken out of the possession of the assured by capture. And in case of condemnation, it seldom happens that notice is not taken in the Court of Admiralty of any defect of documents. This would be sufficient for the defendant’s purpose. Any thing which shews probable cause to suspect, that the necessary papers were wanting, will throw the burden of proof on the plaintiff. But without something of that kind, it may be left to the jury to presume, that all was right. I am more inclined to be satisfied with this practice, because a warranty that property is American, in its plain import amounts to no more than that it belongs to an American citizen, and it was rather a forced construction, by which it was implied, that it should be accompanied with neutral documents. The insurers are placed in a very advantageous situation by this construction, and therefore may be content, if it is expected, that they should shew^some probable cause for -suspecting that the proper documents were wanting. This was the footing on which the Judge left it with the jury, and I think he was right.
On the breach of blockade the cause has been argued at very great length. Whether Sir Home Topham, who commanded the British squadron before Monte Video, ever de *134 dared a blockade, and if he did, whether. he maintained it with such perseverance as he ought to have done, were questions warmly contested, and on which much evidence was given, and some of it contradictory. The Judge on the trial declared the inclination of his mind to be in favour of the defendants on all matters of facts, except the maintaining of the blockade, and on that, he seemed undecided. In reporting the case, he has expressed no dissatisfaction with the verdict. Under these circumstances I should feel great difficulty in setting it aside. The weight of evidence appears to me rather to be in favour of the defendants, but I will not say, that there is that clear and decisive preponderance, which is necessary, to entitle the party to a new trial. Something depends on the character of the witnesses, for the testimony cannot be reconciled, and of their characters I know nothing. I have often said, that unless the Judge who tried the cause, declares himself dissatisfied, it must be a very clear case which could induce me to send matters of fact to a second trial. This is not such a case, and, therefore, I am of opinion, that the verdict should stand.
Yeates J.
I thought-on the trial, and still think, that the master of the Rolla, was a competent witness. He was not bnmediately and directly interested in the event of the cause; and although he was interested in the question, whether he had been guilty,,pf a breach of blockade, the possibility of a future suit being brought against him, did not furnish a legal ground of exclusion. Such has been the general bent of decisions, according to the assertion of. Kent, Justice, in Baker v. Arnold, 1 Caines, 276, and many of our books. The settled practice of this Court, which has been affirmed on solemn argument, to receive in evidence the protest of the master, in a suit against underwriters, furnished t.o my mind an additional reason for admitting his deposition, taken under a rule of Court. If an ex parte protest of a Captain is admissible under a practice peculiar to ourselves, I can see no rea-, son, why his deposition, taken on a full cross-examination, should be refused. It may also be assimilated to hearsay, which may be received either to corroborate or invalidate what he had sworn previously. The ground of objection is, that the master is liable to the ship owners for a breach of blockade, on account of the privity subsisting between them, *135 but the statute of limitations has interposed an insuperable bar to sqch suit, in the present instance. The sentence of condemnation passed against the Rolla, on the 3d June,1807, and the preliminary proofs, were exhibited by the plaintiff’s agent to the defendants on the 17th day of August, 1807. More than eight years therefore have elapsed, since knowledge of the supposed misconduct can be traced to the plaintiff. If, however, the Captain should still be thought responsible to his owners, in a future suit, the impediment to his testimony is removed if he is equally responsible to the underwriters. It was the decided opinion of Lord Kenyon, in Bird v. Thompson, (1 Espin. 339.) that the master of a vessel insured, is liable to the insurers for misconduct, ex delicto. It would be strange indeed, that in a system of commercial law, bottomed on the purest good faith, the Captain of a ship should be guilty of a flagrant breach of the law of nations, pregnant with the most injurious consequences to insurers, who must necessarily confide in his prudence, and yet be dispunishable therefor, at the suit of the party injured !
In the case of the Lady Ann, (1 Edwards’ Admiralty Cases, 235.) where a mariner had his election to proceed for his wages against the owners, the master, or the ship, and had instituted proceedings against the owners, Sir William Scott held, that the master had no immediate. interest in the suit, and was, therefore, a competent witness, by all the rules he was acquainted with. I will only add in his language, as applicable to this case, that I told the jury, “it was necessa“ry to watch Captain Coffin’s testimony with jealousy, as “his conduct constituted a material part of the adverse “ case.”
After the plaintiff had closed his testimony, the defendant’s counsel moved for a nonsuit, because it had not been shewn, that there had been a sea-letter, a certificate of the cargo, and from what port the brig had sailed, a charter par,ty, or bills of lading, and a role d’equipage, on board at the time of the capture; and it was insisted, that these were the proper documents to evince her being a neutral vessel, according to treaties made with foreign nations. A copy of the register from the custom house at New Tork, certifying, that the original had been detained in the High Court of Admiralty in London, where she had been condemned as prize, had. been previously given in evidence. I refused the mo *136 tion for a nonsuit, conceiving it to be a surprise on the plaintiff to call for those papers. I fully admitted the propriety of the rule, that the vessel should have regular documents on board, made necessary either by the law of nations or by treaties with foreign countries, to shew her neutral character, and that unless this was shewn to the satisfaction of the jury, the plaintiff was not entitled to recover. If I had been asked, on the part of the plaintiff, to allow time to send to the custom house at New York for copies of these documents, I should have deemed it my duty to have promptly granted it, for the sake of doing complete justice. But the plaintiff’s counsel were willing to run the risk of the jury’s deciding on the fact, that these documents must have been on board, from the laws of the United States, and the usages of the custom houses.
The brig had a register and a regular clearance at New York, which she could not have obtained without an exhibition of the papers called for. It would be monstrous to suppose, for a single moment, that the Captain would leave port, without the necessary muniments to secure his safety on the ocean. I thought these presumptions fair, reasonable, and natural. The original documents, it appeared, (such as they were) had been deposited in the English High Court of Admiralty. According to the course of the English practice in such cases, it is usual to give, general evidence of neutrality, and leave it to the insurers to dispute and falsify it. 2 Marsh. 714. It weighed greatly with me, that although we have had many trials in this Court upon express warranties of neutrality by the insured, it had never been required, that the documents now demanded should be produced. The want of them in all the cases I had met with, had either incidentally appeared in the course of the evidence, or had been shewn on the part of the insurers. Here the American character had been impressed on the brig by her register. A recurrence has been had, since the trial, to the custom house at New York, and the result has evinced, that the neutral documents asked for before me, could have been produced without difficulty on the trial, if it could reasonably be supposed, that such a deviation from accustomed practice could have been expected. It has been offered to spread these papers on our table.
I do not find, that the charge I delivered to the jury has *137 been questioned in point of law. I gave them a brief summary of what I deemed to be the law of civilised nations, as to blockades, and the consequent rights of the blockading party and of neutrals thereon. I did not conceal from the jurors the impressions which the evidence had made on my mind, but told them they were the exclusive judges of the credibility of the witnesses. I attempted to bring the prominent features of the case before them, and informed them of the legal rules to be observed in weighing evidence. I stated to them, that it rested with them to say, amidst the conflicting testimony, what effect the proofs had on their consciences and judgments ; and that it was their duty to judge with impartiality and decide with firmness, remembering, that the fair and equal administration of the law is the best security for every individuabas well as of society in general. The jury have found for the plaintiff, against the inclination of my mind, on an attentive consideration of the whole evidence, but I do not think myself at liberty to disturb their verdict on that account, where there has been contradictory-evidence. In the exercise of legal discretion, the Court will not pass the limits which they have assigned to themselves in former instances of the like nature. They refused a new-trial on a verdict given in the Circuit Court, at Lancaster, for the defendant, in April, 1805, between George Moore, jun. and Abraham Witmer, and in a late case between Griffith and. Willing fe? Francis, on a verdict found for the plaintiff. In both these suits strong circumstances existed against the finding of the jurors. Many decisions of the same kind are to be found in the English books.
Upon the whole matter, I am of opinion, that thé rule to shew cause why a new trial should not be granted, be discharged, and judgment entered on the verdict for the plaintiff.
Srackenridge J. concurred.
New trial refused.

 2 Condy's Marsh. 744.