Catlett
v.
Pacific Ins. Co.

CATLETT & KEITH vs. THE PACIFIC INSURANCE COMPA-
NY OF NEW-YORK.

THIS was an action on a policy of insurance, brought to recover a loss upon the cargo of the brig Sphinx, insured by the defendants, on a voyage from Alexandria (Columbia) to Canton, and back. The cause was tried at the New-York circuit, in November, 1826, before the Hon. OGDEN EDWARDS, one of the circuit judges, and a verdict taken for the plaintiffs, subject to the opinion of the court, on a case to be made.

The declaration averred, that the vessel was American property at the time of insurance; that the cargo consisted of $30,000 in specie, Spanish milled dollars; and that the plaintiffs were the owners of, and interested in the specie, to the amount of all the money by them insured thereon.

The whole invoice, adding premiums on specie, &c. a-mounted to upwards of $100,000; of which sum, $70,000 were insured by offices in New-York, and $26,000 by the

*Extrinsic evidence is admissible to shew who were intended to be embraced in a policy of insurance effected " on account of the owners," without a designation of the persons intended to be assured; and two out of three owners, who cause an insurance to be effected for their separate benefit, may maintain an action in their own names on the policy* without joining the other owner as a plaintiff. If one of three partners in a cargo goes out in a vessel in which the same is embarked as supercargo, his power and authority as *partner*, from the commencement of the voyage, is *merged* in his character as *supercargo*. Where the instructions to a master of a vessel are, to proceed to a particular port, and there deliver his cargo to A. B. supercargo on board, A. B., as supercargo, has no control over the cargo, until it arrives at the port of destination; and the master has no right to deliver it to him in that character, until such arrival. And where the voyage is broken up before the arrival of the vessel at the port of destination, and the cargo is abandoned by the assured, and the master delivers it to the supercargo, such delivery constitutes the supercargo the agent of the master, and the subsequent acts of the supercargo are to be considered as the acts of the master, who, after the abandonment, is the agent of the underwriters.

A report by the surveyors of a port into which a vessel has put in in distress, that the repairs of a vessel would cost $20,000, when the vessel itself was only valued at $10,000, and proof that upon such report and the request of the master, the vessel was sold by order of a court of vice-admiralty, is sufficient evidence of a technical total loss, especially where the underwriters put their refusal to pay upon other grounds. The warranty of *American* property is established by proof that the vessel is owned by citizens of the United States, that she cleared from an American port, and had a register. Proof that a vessel has a register, is *prima facie* evidence that it was on board during the voyage. A copy of the register of a vessel from the treasury department of the United States, where it was deposited after condemnation, certified by the register of the department, and verified by the certificate of the secretary of the treasury, under the seal of the department, is admissible evidence.

ALBANY,
Oct. 1828.

Catlett
v.
Pacific Ins. Co.

Suffolk Insurance Company in Boston. The vessel sailed from Alexandria on the 31st March, 1818—Peyton R. Page, master, Thomas R. Keith, supercargo. She sustained some injury before she left the Potomac, by being run foul of by another vessel, which was repaired before she went to sea. During the month of April, she experienced heavy seas and boisterous weather, and became leaky. On the 2d of May, the master put into Funchall roads, in the island of Madeira, where he again repaired, and put to sea on the 16th of that month. From the 20th June to the 16th July, the vessel again suffered from heavy weather and rough seas, and was so much strained, that on the 17th July she made three feet of water in fifteen minutes, and it was with great difficulty the crew could keep her free with all the pumps going. On the 18th, it was determined to make for the first port, and the brig was kept away for the isle of France, where she arrived on the 29th July. A survey was held on board of the brig, and the cargo landed by order of the surveyors, for the purpose of enabling them the more effectually to examine her condition. On the 14th *August*, a second survey was had, when it was found that eight of her futtocks were broken on her larboard side, and two or three on her starboard side. The surveyors reported, that the brig could be repaired, but that the cost at that place would be $20,000; upon which report, and upon the request of the captain, the court of vice-admiralty in the Isle of France, ordered the brig to be sold, and she was sold accordingly. The cargo was delivered to Mr. Bickham, the American consul at the Isle of France, who was the agent of Thomas R. Keith, the supercargo; the captain and supercargo having selected him as the most suitable person to take charge of the specie. The master testified, that he considered the supercargo as part owner of the cargo, and believed that the delivery of the specie to Mr. Bickham was the best disposition he could make of it, for those who might be interested in the cargo. The master, shortly after, left the Isle of France, and had no knowledge of what became of the specie after the delivery of it to Mr. Bickham. It however appeared, that the supercargo invested the specie at the Isle of France, where dollars

sold at from 22 to 24 per cent. advance, in cotton, and shipped the same to Liverpool, in England, where it netted £10,-703 2s. 8d. sterling.

On the 16th *November*, 1818, Thomas R. Keith, at the Isle of France, wrote a letter to James Keith, junior, one of the plaintiffs, in which he mentioned having written per Capt. Page, on the 5th October, but, as he learnt the captain was detained at Bourbon, he had concluded to forward a copy of the protest, sales, &c. He mentioned, that not being able to procure a passage to Canton, he had invested his funds in Surat cotton, stating the price, which he said was high ; but at the time the purchase was made, the quotation from England would leave a profit, and from the information received, he thought it the best mode of laying out the funds. Nor was this opinion altered, until the evening before writing the letter, when a ship arrived from Bordeaux, which reported so differently from any thing he had heard at the Isle of France, that he was fearful the result would be unfavorable, and expressed a hope that the plaintiffs had abandoned both vessel and cargo. On the 9th *February*, 1819, Charles J. Catlett, residing at Alexandria, district of Columbia, wrote Le Roy, Bayard & Co. of New-York, to abandon to the defendants so much of the cargo of the brig Sphinx as was insured by the policy of the defendants, who on the 24th February, gave notice to the defendants, that the voyage was broken up and defeated by the condemnation of the vessel at the Isle of France, and in behalf of the owners, abandoned to the defendants so much of the cargo of the vessel as was insured by their policy, for *twenty-five thousand dollars*, dated 2d February, 1818, claimed payment, and transmitted several documents establishing proof of loss, saying that proof of interest would be furnished without delay.

Amongst the preliminary proofs produced at the trial, were the following documents : 1. An affidavit of the plaintiffs, made on the 27th Feb. 1819, enumerating the several policies effected on the vessel ; 2. An affidavit of interest made by Catlett, one of the plaintiffs, on the 2d April, 1819, stating that he, together with James Keith, jun. and Thomas R. Keith, were the owners and only owners of the cargo of the brig Sphinx, he

being owner of one half thereof, and the said James Keith, jun., and Thomas R. Keith being the owners of the other half; and that he, the deponent, and J. and T. Keith, were the owners of the brig, and that they are all native citizens of the U. S.; 3. The original invoice, and the original bill of lading of the vessel, dated the 31st March, 1818, stating that 90,000 Spanish milled dollars had been shipped on board the brig Sphinx, by Charles J. Catlett, James Keith, jun. and Thomas R. Keith, $45,000 being the property of James Keith, jun., and Thomas R. Keith, and $45,000 the property of Charles J. Catlett; 4. A letter from Charles J. Catlett to Le Roy, Bayard & Co., dated the 29th January, 1818, ordering insurance on joint account of himself and James Keith, jun., upon the brig Sphinx, against all risks on vessel, $10,000, and on specie shipped, $70,000; 5. The policy of insurance of the defendants, dated the 2d February, 1818, whereby an insurance was effected by Le Roy, Bayard & Co. *on account of the owners,* to the amout of $30,000 on all goods laden or to be laden on board the good American brig, the Sphinx, the risk to commence from the lading; 6. A letter from Charles J. Catlett to Thomas H. Perkins, of Boston, dated the 5th March, 1818, ordering an insurance on the cargo of the brig, to the amount of $26,000, on account of Charles J. Catlett, James Keith, jun., and Thomas R. Keith, which was effected by *obtaining* the Suffolk Insurance Company, in Boston, to underwrite to that amount; 7. A letter of instructions from the plaintiffs to Thomas R. Keith, dated the 26th March, 1818, instructing him to invest the $90,000 shipped, in purchases at Canton, and, if necessary, to negotiate a credit for a sum not exceeding $30,000 more; 8. A letter of instructions from the plaintiffs to Capt. Page, dated the 28th March, 1818, directing him to take command of the brig and proceed to Canton, and there deliver his cargo to Mr. Thomas R. Keith, supercargo on board, who would furnish him with a return cargo, &c.

In chief, a copy of the register of the Sphinx was produced and read in evidence, though objected to. It purported that the register had been received at the treasury department, after the condemnation of the vessel at the Isle of

France. The copy was certified by the register of the treasury, whose certificate was verified by another from the secretary of the treasury of the U. S., under the seal of his department. The captain testified, that after the voyage had been determined on, and whilst he was preparing for it, he heard James Keith, jun., say that he had given to his brother, Thomas R. Keith, one third of his interest in the shipment, and that he was to have a third of the profits. Witness knew, or had good reason to believe, that Thomas R. Keith had no money to ship, upon the voyage. The declaration of James Keith, jun., was made after the 20th February, 1818, in the counting room of Charles J. Catlett, who, on being asked his opinion, said that it would be an insurable interest, and that they were short insured about $30,000; that he would write to T. H. Perkins, of Boston, to effect further insurance, and that Thomas R. Keith's interest should be insured in the Boston policy. Mr. Sands, in whose hand writing, as assistant president of the pacific Insurance Company, the preliminary proofs produced at the trial had been shewn to be, testified, on the examination of the defendants, that he became vice-president of the company about five or six years after the date of the insurance in this case, that until then he knew nothing of the matter; he had understood the ground of the defence to be, the partnership of the parties, and never understood that there was any question as to the loss of the vessel. W. R. Jones testified, that he was secretary of the company at the time of the loss. The payment was resisted on various grounds, though he had no positive recollection of any other grounds than the partnership of the parties, and the investment of the money in cotton, at the Isle of France. A stipulation between the parties, dated the 26th July, 1819, was read in evidence by the defendants' counsel, the purport of which was, that the assured should take the proceeds of the cotton shipped at the Isle of France to Liverpool, without prejudice to their claim upon the underwriters; and in case of a recovery against the underwriters, the amount received by the assured as the proceeds of the cotton, it was agreed, should be credited to the underwriters.

ALBANY,
Oct. 1828.

Catlett
v.
Pacific Ins. Co.

Catlett
v.
Pacific Ins. Co.

A verdict was taken, by consent, for $18,315,13. Interest was computed from the 1st September, 1824, with power to the court to increase or diminish the amount, should the court be of opinion that the plaintiffs ought to recover, and that the interest ought to begin at an earlier or later day.

*J. Duer*, for plaintiffs. It is objected by the defendants, that Thomas R. Keith ought to have been joined as a party in this suit, having a joint interest with the plaintiffs in the specie shipped. Admitting he was an owner when the risk commenced, he had no interest in the subject of the policy. The insurance was effected by Le Roy, Bayard & Co., at the request of Catlett, for the benefit of himself and James Keith, jun. The policy was filled up in the name of the agents, *on account of the owners.* On the *2d February*, the date of the policy, Catlett and Keith were the sole owners. The letter of instruction is conclusive evidence for whose benefit the insurance was effected, and was properly resorted to, to prove the fact. (2 *Caines*, 203.) To have rendered it necessary to have made Thomas R. Keith a plaintiff, it should have appeared that he was interested *at the time of effecting the insurance.* Being a part owner *at the commencement of the risk*, gave him no claim under the policy previously effected. (2 *Bos. & Pul.* 155.) It cannot be denied, that one of several partners may insure in his own name, on his own account, and recover in proportion to the quantum of interest he proves at the trial. (1 *Caines*, 276. 11 *Johns. R.* 302. 1 *Paine's R.* 615.)

There is sufficient evidence of a total loss to justify the abandonment. The court will draw the same conclusions from the testimony on a verdict subject to the opinion of the court, which a jury would have been warranted to draw. (14 *Johns. R.* 270.)

The warranty that the brig was an American vessel, or had a national character, is supported by very different proof in time of peace, than what would be required in time of war. The voyage in this case was undertaken in a time of peace, and therefore it was only necessary to shew that the vessel was owned by American citizens. In time of war, it would

be necessary to shew that she had a register, and that it was on board. Here the proof of ownership by the plaintiffs, being American citizens, was sufficient without the aid of any documentary evidence. (4 *East*, 137.) The necessary documents will be presumed to have been on board, unless doubts or suspicions are raised by proof. (2 *Serg. & Rawle*, 133.)

The right of the plaintiffs to abandon and recover as for a total loss, was not affected by the investment of the specie by Thomas R. Keith, in the purchase of cotton at the Isle of France. After the abandonment, Thomas R. Keith remained *quasi* agent or trustee of the insurers, and had a right to dispose of the cargo as he thought most for the interest of the concerned; and if he acted with fidelity, and not with a view to his own benefit, the investment of the specie in the purchase of cotton was no waiver of the abandonment, nor did it prejudice the claim against the insurers for a total loss. (5 *Johns.* 310.) He had a right to invest the cargo in the most convenient property for transmission. (1 *D. & E.* 611.) At all events, the plaintiffs cannot be prejudiced by his acts; he was the agent of the captain, whose instructions were, to deliver the cargo to him on the arrival of the vessel at Canton, but not before. By the acceptance of the appointment of supercargo, his rights and powers as a partner or joint owner were suspended, and merged in his new character. He had lost the possession and control of the property *in transitu*, and his functions as supercargo could not be exercised until the arrival of the vessel at Canton. He was not a party to the policy of insurance, and could not, by any act of his, destroy the plaintiffs' right to abandon. Every partner may insure for himself, and abandon for himself.

If entitled to recover, the plaintiff ought to be allowed interest from 1819, when the cargo was abandoned, and documents, shewing the loss of the vessel, were exhibited to the defendants.

*P. A. Jay,* for defendants. Granting the plaintiffs all their facts, and all their law, they have recovered *one sixth* more than they are entitled to, one third of James Keith, junior's share of the cargo having been conveyed to Thomas R. Keith.

ALBANY,
Oct. 1828.

Catlett
v.
Pacific Ins. Co.

If Thomas R. Keith can come in as a part owner under the policy, then the action must fail for the non-joinder of him as a plaintiff. If not entitled to be considered as an assured, then the plaintiffs cannot recover for his part.

Who are the parties to the contract? The insurance was effected for the benefit of the *owners* of the property laden and to be laden on board the vessel. Until the property could be identified, the owners could not be known. If by the word *owners* is meant the proprietors of the property, then evidence of who were intended to be assured, limiting the policy to a less number than all embraced within its terms, was inadmissible. (2 *Cranch*, 419. 8 *Johns. R.* 192.) If the rights of the parties are to be tested by the fact of who were the owners at the date of the policy, and not at the commencement of the risk, then there is a total failure of proof, as there were no owners until long after its date, the specie probably not being shipped until the day of the sailing of the vessel.

The vessel was not duly documented. It is said it was a time of peace; but it is supposed, because England and France were not at war in 1818, that all the rest of the world were hushed in peace? In 1818, there were wars; there were belligerents; and we were neutrals. The proof of the register was defective. A document certified by an officer not authorized by law to perform such duties, is not evidence; but if there was a register, it ought affirmatively to have been shewn that it was on board during the voyage. There is no proof that the vessel had the American national character, though it was proved that the plaintiffs, being American citizens, owned her.

There is no proof that the vessel could not have been repaired at the Isle of France for a moiety of her value. It is said the repairs would have cost $20,000; but the value of the vessel is not shewn.

The preliminary proofs were imperfect. When the vessel was abandoned, $25,000 was claimed from the insurers; now $30,000. Then *three* persons were represented as having an interest in the cargo insured; now but two. Then the interest of James Keith, jun., was represented as being the

half of a moiety; now two-thirds of a moiety, and that depending for proof upon the declaration alone of the plaintiffs.

The investment of the cargo at the Isle of France, by one of the owners, in a new adventure, discharged the defendants. The rights of Thomas R. Keith, as a joint owner, did not merge in his character of supercargo. (2 *Livermore on Agency*, 216.) As part owner, he had the right to accept the property at the Isle of France. He did so accept it, and invested it in a new adventure. It was not invested to be sent home, but was embarked in a new speculation; and if it is allowable to an owner thus to control the property, he may continue his adventures *ad infinitum*, and still insist upon his abandonment.

*G. Griffin*, on same side. The preliminary proofs were not sufficient. When proof of interest was exhibited, three persons were shewn to be interested; but it appearing that one of them had appropriated the property, and embarked in it a new speculation, it is now attempted to get rid of the consequences of such interference, by shewing that he acquired his interest after the policy had been effected. On the trial, it was not pretended that the preliminary proofs were perfected previous to 1824, though now, interest is claimed since 1819, though there is no proof to support such claim.

A description of the national character of a vessel in a policy, is equivalent to a warranty that she possesses such character. (8 *Johns. R.* 319.) The vessel was described as American. There is no proof that she was such, nor that she was duly documented, and had her register on board. The copy register produced was not evidence, unless made so by statute. (1 *Starkie on Ev.* 154.) The fact, that the register of the treasury was the keeper of the paper, did not give him the right to certify it, to be used as evidence. (14 *Johns. R.* 308.) If the vessel had a register, there was no proof that it was on board, and unless it was on board, it was useless. To entitle a plaintiff to recover, he must affirmatively prove his warranty; it is preliminary to his right to recover. The case in *Serg. & Rawle*, is distinguishable from this. There, the national character of the vessel and owners was proved;

here, it is proved only by the affidavit of the plaintiffs. There, the only question was, whether the register was on board, which the jury were left to presume from the circumstances of the case; here, the captain was examined by the plaintiffs, and might have proved the fact, if it existed.

There was no evidence that the vessel could not be repaired for a moity of its value. Allowing the probable expense to be $20,000, where is the proof that the vessel was not worth $30,000? The deterioration must be two-thirds, to authorize an abandonment.

Thomas R. Keith ought to have been made a co-plaintiff. It is admitted he was an owner when the voyage commenced, and the policy commenced on the attaching of the risk. (2 *Taunt.* 237.) The settled legal construction of the policy cannot be varied by parol proof. If there was a mistake, chancery only could correct it. Proof of who were the owners intended to be insured, was not admissible. But admit the letter to Le Roy, Bayard & Co., does it vary the insurance? When Catlett and Keith were apprised that the insurance had been effected by their agents, for the benefit of the owners generally, they ratified the act, as they had a right to do. On the day of sailing, they made out their invoice, in which they state *Thomas R. Keith* to be an owner, and charge him with a share of the premium of insurance. They subsequently obtained an insurance in Boston, and there the name of Thomas R. Keith was inserted. The abandonment was on account of the *owners.* Surely, Thomas R. Keith was then an owner, and in the proof of interest submitted, he is stated to be an owner.

The interest averred in the declaration, is variant from that proved. If the assured aver an entire interest in themselves in the subject insured, such averment is not supported by evidence of a joint interest with others. The probata and allegata must agree. (2 *Cranch.* 440. 3 *Starkie's Ev.* 1159.)

Any act of ownership, subsequent to an abandonment, waives the abandonment. Thomas R. Keith was an owner, either legally or equitably; an equitable interest is protected at law, (8 *Johns. R.* 152,) and the correspondent liabilities and

obligations attach. At all events, he was a partner; and though not a general partner, the adventure in which he had embarked with the plaintiffs, created a special partnership, and as such, he had the power to bind his co-partners in any matter relating to the common concern. (20 *Johns. R.* 611.) He had an interest in the property which gave him the right to control it. He might abandon, or he might choose to continue his dominion over it. He chose the latter. The property was safe in the hands of the American consul. The dollars, of which the cargo consisted, sold at an advance of from 22 to 24 per cent. ; and, instead of leaving the money, or investing it in bills, he entered into a cotton speculation, and no thought of abandonment occurred until he learnt the probable ruinous consequence of his speculation. Then he wrote to his co-owners to abandon, but not before. It is most evident he did not act as the agent of the insurers in the investment of the cargo in cotton, but intermeddled with it for his own advantage, and thereby the abandonment was waived ; for it is only in consequence of the absolute renunciation of all right, possession and use of the property, that the insured are entitled to recover for a total loss. (10 *Johns. R.* 177, *confirmed in error.* 12 *Johns. R.* 25.) The idea of the power and rights of a joint owner being merged in the character of a supercargo, is novel, and, until this case, was never before suggested. Although Thomas R. Keith was the owner of only one-sixth of the cargo, on the breaking up of the voyage at the Isle of France, in the absence of his co-owners, he had the absolute right to control the property. (1 *Dallas,* 119. 12 *Serg. & Rawle,* 248.)

*D. B. Ogden,* in reply. It is not competent to the defendants now to object to the want of proof of the national character of the vessel or of the loss sustained. This should have been done on the presentment of the preliminary proofs. Then the only objections were made, that Thomas R. Keith was a partner, and that as such partner, he had waived the right to abandon by the investment of the funds at the Isle of France. If a party places his objections to preliminary proofs on a particular point, he cannot afterwards suggest an insufficiency in other particulars, because, had it been stated, the

defect might have been supplied. The American character of the vessel was proved by the affidavit of Mr. Catlett, which having been used by the defendants for one purpose, became evidence of all contained in it. The vessel sailed from an American port, was commanded by an American captain, and in the absence of all circumstances creating suspicion, the presumption is in favor of a compliance with the warranty. The register was sufficiently proved; it was authenticated under the seal of the treasury department of the U. S. (*Laws U. S., Story's ed. 1st vol. 272, Revenue Laws.*) When a seal is given by law to a public officer, any paper authenticated under that seal is evidence. As to the proof of loss, the probable expense of repairs was stated at $20,000, and from the letter of instructions, ordering insurance, it appears the vessel was valued at only $10,000.

Whether Thomas R. Keith ought to have been joined as a plaintiff, depended upon the question, whether he was *a contracting party* to the policy of insurance. This being an action on contract, can be brought only in the name of the parties contracting; and if brought in the name of subsequent owners, the plaintiffs would be nonsuited. The policy was effected at the request of and for the benefit of the plaintiffs; and though others acquired an interest before the risk attached, they could not join in the action. That one or more partners or joint owners can insure their separate interests, and that the acts of the parties themselves may be given in evidence to shew the facts, has been determined by the court. (1 *Caines*, 276. 2 *Caines*, 203. 11 *Johns. R.* 302.)

As to the investment of the funds by Thomas R. Keith. He was not a partner, but a joint owner, and his connection with the plaintiffs was confined to this one commercial adventure. But if considered a partner, his conduct could not affect the rights of the plaintiffs. One joint owner or partner may assure his separate interest, and when a loss happens, he has the right to abandon, of which right he cannot be deprived by any act of his partners; for if so, he looses the rights of an assured. Whatever might be the effect of the acts of a partner who was jointly assured, the acts of an owner who had no interest in the assurance, could not injure

the claims of the assured. One partner may bind another in any act relating to the partnership business, but not out of the scope of the partnership concern. What right had Thomas R. Keith to interfere with the funds previous to the arrival of the vessel at Canton, where it was contemplated the funds should be used and no where else? The captain knew the terms of the partnership. Would he have been justified to have taken the directions of Thomas R. Keith, gone to France, disposed of the cargo, and permitted him to have received the avails? Nor could Thomas R. Keith, as supercargo, commit the rights of the plaintiffs. He was supercargo for a special voyage, acting under a limited authority, expressed in his letter of instructions; his functions did not commence until the arrival of the vessel at Canton. In case of the breaking up of the voyage by reason of stress of weather, the general law of insurance threw the agency of ship and cargo on the master; and it belonged to him, and not to the supercargo, notwithstanding the opinion expressed in 2 *Livermore*, 216, that the power of an agent can never be in abeyance. The author cites 12 *East*, 381, in support of the position assumed by him; but the case in *East*, instead of supporting, contradicts the principle assumed. So also, Judge Thompson, of the U. S. bench, is of a different opinion. (1 *Paine*, 619.) By the abandonment of the cargo, the insurers were put in the place of the assured, and from that moment the master became the agent of the underwriters. The master delivered the cargo to the American consul, believing such to be the best disposition he could make of it for the benefit of those interested. The captain being the agent of the insurers, could not divest himself of that character by transferring his authority to another; nor could his acts affect the rights of the assured. If Thomas R. Keith, as admitted on the other side, had the right to receive the cargo and purchase bills at the Isle of France, then he had the right to lay out the specie in the purchase of such property as he thought most advisable, and the only limitation to his authority was, that he should act in good faith. As to the question of the allowance of interest, in

ALBANY, Oct. 1828.

Catlett
v.
Pacific Ins. Co.

case the plaintiffs were permitted to retain their verdict, the counsel adverted to various facts in the case, from which he argued, that the liability to pay accrued in 1819, instead of 1824.

*By the Court,* SUTHERLAND, J. The most important inquiry in this case is as to the relation in which Thomas R. Keith stood to the plaintiffs on the record at the time when the insurance was effected, or the policy attached, and also when the loss occurred at the Isle of France.

If he was one of the assured, then he was a party to the contract, and should have united in the action ; and upon that hypothesis, it seems also to be conceded that his interference with the property after the disaster at the Isle of France, would discharge the underwriters. (*Ogden & Murray* v. *N. Y. Ins. Company,* 10 *Johns. R.* 177, *and* 12 *Johns. R.* 25, *S. C. in error, and cases there cited. See also* 6 *Cranch,* 272.)

The policy bears date on the 2d day of February, 1818. The only designation which it contains of the assured is in its commencement, where it states, " *that Le Roy, Bayard & Co. on account of the owners, did make insurance.*" The authority under which they acted in procuring the insurance, is proved to have been the letter of Charles J. Catlett to them of the 29*th January,* 1818. In that letter, Mr. Catlett requests that the insurance may be effected on the joint account *of Mr. James Keith, jun. and himself.* That such was the intention of Catlett and Keith at the time, and that they supposed that the policy in question was on their sole account, is further proved by the testimony of captain Page, who states, that when Catlett was first apprised of the intention of Mr. James Keith to give his brother an interest in the adventure, and was asked by James Keith whether that interest was an insurable one, he replied that it was, and that they (Catlett and James Keith) were then insured about $30,000, and that he would write to Mr. Perkins, of Boston, to effect further insurance, and that *Thomas R. Keith's interest should be insured in the Boston policy.*

We accordingly find, that on the 5th of March, 1818, Mr. Catlett writes to Mr. Perkins, his Boston correspondent, and requests him to effect insurance on $26,000 of the specie, for account of *James Keith, jun., Thomas R. Keith and Charles J. Catlett*, and states in his letter, that James Keith, jun. and himself *had already had insurance effected on* $80,000. But this evidence is objected to as incompetent on the following ground : That it appears from the deposition of captain Page and the other evidence in the case, and indeed is not denied, that Thomas R. Keith had an interest in the cargo to the amount of one sixth, previous to the lading it on board the vessel ; that the term *owners* in the policy means, in judgment of law, owners at the time when the policy attaches, which is when the cargo is put on board ; that such being the construction of law upon the policy, and it appearing that Thomas R. Keith was at that time interested in the cargo, he was an owner, and therefore one of the assured within the meaning of the policy ; and that parol evidence was inadmissible to control or explain the intendment of law. The principle here advanced, I apprehend, is not applicable to a case like this ; the assured were not named in the policy ; who they were, must therefore be ascertained by extrinsic evidence. The general term *owner* is used not, as it seems to me, in its strict technical and legal sense, but as equivalent to *whomever it may concern,* leaving the party who may claim the benefit of the policy, to establish by evidence, that he caused it to be effected for his own security. This principle seems to be fully recognized in the case of *Lawrence and Whitney* v. *Van Horne and Clarkson,* (1 *Caines,* 276.) There it was a joint adventure by three parties, having distinct interests. The plaintiffs being one of the parties, effected an insurance to a certain amount, on the cargo generally, whether in their own names or as owners does not appear ; and it was contended that the legal construction of the policy was, that the whole cargo was insured, and that it was not competent for a party, under such a policy, to aver in his declaration an interest of one third and recover accordingly ; that he was bound to specify in his policy the interest in the cargo which he intended to insure. But it was held

by the court that the assured is not required to state the particular interest or proportion of interest which he intends to have insured; that it is sufficient if he have an insurable interest to the amount insured, and it is immaterial whether it be a distinct or undivided share. And it is remarked, that it may often be difficult to ascertain the interest of each with certainty; that the owners are equitably entitled to their shares in severalty, and that the interest of each ought to be permitted to be severally enforced under a general policy. In the present case, (it is further observed by the court,) it appears that the insurance *was in fact intended for the several interest of one of the parties*, and a witness, who was one of the partners, testified that the plaintiffs had no authority to insure except *on their own account*. Now if it be admissible to show by extrinsic evidence, that the term *cargo*, as used in a policy, means not the whole cargo, but an undivided share or interest in it, why is it not competent to shew by the same species of evidence, that the word *owners*, in a policy, was not intended to embrace all the owners, but such of them only as caused the insurance to be effected? The evidence contradicts the policy as much in the one case as in the other; but in truth, it is no contradiction; it is only reducing to certainty that which was left uncertain by the general phraseology of the policy. (*Murray* v. *The Columbian Ins. Company*, 11 *Johns. R.* 311. *Marsh. on Insur.* 682, 710, 730. *Lawrence* v. *Sebor*, 2 *Caines' R.* 203.) I am of opinion, therefore, that the plaintiffs were properly admitted, to show that the insurance was effected by them, to cover their own individual interest in the adventure, and that they have shown it by competent evidence. The action, therefore, is properly brought in their names only, and they cannot be prejudiced by the acts of Thomas R. Keith, on the ground of his *being one of the assured*.

If Thomas R. Keith was not one of the assured, then it seems to me not very important, to determine what was the precise character of his interest in the adventure. If he was a partner, it was in a limited and special partnership, confined to this transaction only; and I am inclined to think that the views of judge *Thompson* on this point are sound; that, under the circumstances of this case, admitting Thomas R.

ALBANY,
Oct. 1828.

Catlett
v.
Pacific Ins. Co.

Keith originally to have been a partner, his power and authority as partner were, when the voyage commenced, merged in his character of supercargo. (1 *Paine's R.* 619.) I do not perceive the legal absurdity which this position is supposed, by the defendant's counsel, to involve. An adventure is agreed upon, upon the joint deliberation and advice of all the parties concerned. Its details are arranged, and all the precaution taken to render it successful, which the joint wisdom of all can suggest. Cannot one of the partners be deputed, under special instructions as supercargo, to carry the views of all into effect, without arming him with authority to substitute his own judgment and discretion in lieu of his special instructions? It may be conceded, without affecting the argument in this case, that, in relation to third persons, ignorant of his special character, dealing with him as partner, his acts in relation to the partnership property, would still bind all the partners; for here, the special character in which Thomas R. Keith acted for the voyage, was known to Capt. Page. He admits that he had frequently seen his letter of instructions, and his own letter of instructions discloses the fact that Mr. Keith accompanied him as supercargo. It directs him *to proceed to Canton, in China, and there deliver his cargo to Mr. Thomas R. Keith, supercargo on board.* The bill of lading, signed by the master, speaks the same language, and binds him to deliver the cargo *at Canton, to Thomas R. Keith, supercargo.* As supercargo, he had no control over the cargo, until it arrived at the port of destination; and the master had no right to deliver it to him in that character until then. After the disaster, the master became the agent of whomsoever it might concern. If there was a valid abandonment, he became the agent of the underwriters; and his delivery of the cargo to Thomas R. Keith, (if it is to be considered as a delivery to him,) was a delivery to him as his own agent; and the subsequent acts of Keith are to be considered as the acts of the master. They were, at all events, not the acts of an owner. (7 *Johns. R.* 412, 514.)

2. The proof of loss was *prima facie* sufficient. The master states, in his deposition, that the surveyors, after a thorough examination, reported that the vessel could not be re-

paired at the Isle of France for less than $20,000 ; upon which report, and the request of the deponent, the court of vice-admiralty directed her to be sold. It is said that the master does not even state that he believed the report of the surveyor in this respect to be true ; but that is the necessary inference, when he made it the foundation of an application to the court of vice-admiralty, for her condemnation and sale. The only proof of the value of the vessel, is contained in the letter from Mr. Catlett to Le Roy, Bayard & Co., of January 29th, 1818, under which they effected the policy. It is there valued at $10,000 ; and if that letter is competent evidence, it is sufficient. No doubt was ever expressed by the defendant, that the technical total loss was sufficiently established. They put their refusal to pay on other grounds.

3. The warranty of *American* property was sufficiently established. It is proved, by the affidavit of Charles J. Keith, of the 2d April, 1819, that she was owned by citizens of the United States. She cleared from an American port ; and I am inclined to think that the register was sufficiently proved. A copy was produced from the treasury department of the U. S., (where the original is required to be filed after a vessel is condemned,) certified by the register of the department, and the fact of his being register, attested by the secretary of the treasury, under the seal of the department. Proof that there was a register, was *prima facie* evidence that it was on board during the voyage. (2 *Serg. & Rawle,* 133.)

4. As to the question of interest : it commenced 30 days after the preliminary proofs were exhibited to the officer. There is no direct positive proof in the case when they were exhibited. The abandonment was made on the 24th February, 1819 ; and the principal documents to establish the interest of the plaintiffs, appear to have been prepared as early as February and April of that year. I allude to the affidavit of Charles J. Catlett and James Keith, jun., of the 27th of February, 1819, and the separate affidavit of Catlett, of the 2d April, 1819. The agreement between the plaintiffs and the defendants, of the 26th July, 1819, which is attached to and made a part of the case, shows, 1. That the plaintiffs at the time knew that the cargo had been invested in

cotton at the Isle of France, and shipped to Liverpool ; and 2. That a suit was then contemplated against the underwriters.

Now the probability is extremely strong, that the knowledge of the defendants as to the transaction at the Isle of France, was derived from the preliminary proofs ; and it is also very improbable that the parties, in a formal article of agreement, would speak of a contemplated suit, if the foundation for a suit had not already been laid, by the exhibition of preliminary proofs, and the refusal of the underwriters to pay ; this evidence is corroborated, in some degree, by the testimony of Sands and Jones, the former secretaries of the company. Mr. Jones was secretary *at the time of the loss ; and payment, he says, was resisted on various grounds.* Payment could not be demanded until the preliminary proofs were exhibited, and the grounds on which it was resisted grew out of them also.

I think it is established *prima facie,* by the testimony of Mr. Bayard, that the letter of Catlett to Le Roy, Bayard & Co., of the 29th January, 1818, which requested insurance to be effected, was exhibited to the underwriters when the insurance was effected.

On the whole, I think a jury would be authorized in inferring from the facts and circumstances in the case, that the preliminary proofs were made some time during the year 1819, and the interest, therefore, ought to commence, say from January, 1820.