By the Court. Woodruff, J
The charge of the Judge given to the jury on the trial, does not appear in the case submitted, and no exceptions were taken by the defendant to such charge. It must therefore be assumed that correct instructions *563 were given to the jury, in respect to all questions of law which were material as a guide to their deliberations, and as to the legal effect of the facts which they might find to be established by the evidence.
The jury having rendered a general verdict for the plaintiff, must be deemed to have found in his favor under those instructions every material fact in issue, so that if there is upon the evidence, any matter of doubt or conflict, it must be deemed settled by the general verdict. The verdict being taken subject to the opinion of the Court on the questions of law only, we are not called upon to consider on this hearing any other questions, than such as were raised on the trial, and such as arise upon the special finding which so far as it is inconsistent with the general verdict, must control the latter. (Code, § 262.) The issues therefore made by these parties by their pleadings, must be taken to have been found under proper directions "in favor of the plaintiff, except so far as the facts specially found should control that result.
The only questions of law appearing to have been formally raised and submitted to the Judge on the trial, were those suggested by the defendant’s motion for a nonsuit, which being denied, he excepted to the ruling. No other exception appears in the case. And the questions of law, subject to which the verdict was taken, are those presented by the motion for a non-suit, and those which arise upon the special findings of .the jury which accompanied their verdict.
The grounds upon which a nonsuit was urged were, that at the time the insurances were effected the defendant had no notice that the plaintiff had any interest in the policies, and that the evidence showed that the defendant had a lien upon them for his general balance against Spurr, the person by whose employment the defendant as insurance broker effected the insurance.
The special finding of the jury establishes the interest of the plaintiff in the subject of the insurance. The insurance was in terms for account of whom it might concern, the agent Spurr being only interested in the policies as a protection to him for his advances.
The finding also determines that Spurr, on whose employment *564 the defendant acted,. was on the 17th of November, 1854, indebted to the defendant in the sum.of $1,782 15 on account of the previous dealings between them, and'that no part of that sum is paid.
¡ We do not, therefore, perceive that there is regularly before us any question of law, except the single one whether upon the evidence the nonsuit should have been ordered on the ground upon which.it was moved by the defendant’s counsel, and whether the amount of the debt due to him by Spurr should be deducted Rom the verdict.
These were the questions of law raised at the trial. Where a defendant moves for a nonsuit, and takes his ground at the trial, he ought not to .be permitted on the review to assign other reasons, .if they are in their nature such as, had they been then called to the attention of the plaintiff and the Court, might have been obviated by other or further proofs.
I repeat, that this question, whether the defendant had such a lien as defeats the plaintiff’s claim to the policies in question, or if not, whether upon the special finding the sum due to. him by Spurr should be deducted from the verdict, appear to. be the only questions now regularly before us, for the reason above stated, and' because also, there is obviously no inconsistency between the general verdict and the special findings, except so far as the latter exhibit a claim to such deduction from the general verdict.
Practically the question is single. Had the defendant at the time this action was brought a hen upon the policies as against the plaintiff? H not, then he clearly is not, entitled either to defeat the action by insisting on a right to detain them, nor to deduct his account from the verdict.
It undoubtedly appeared that the defendant, as insurance broker, had dealings with Spurr, by whose direction he effected the insurance; and it did not affirmatively appear that when these insurances were effected he was apprised that the plaintiff was interested therein. Some of the testimony of the witness Spurr might indicate that the defendant knew that the plaintiff was the owner of the subject of the insurance. He says that he wrote to the defendant that the plaintiff was the owner, but his cross-examination leaves the matter in so great doubt, at least, whether *565 that communication was made at or before the insurance was effected, that we ought to assume that he had at that time no such knowledge.
It also appeared that the dealings between Spurr and the defendant were in the defendant’s capacity of insurance broker, and related to insurance transactions.
It is entirely clear, as matter of law, that if the defendant paid the premiums on effecting these two insurances now in question, he had a lien upon the policies as security for his reimbursement and his commissions. And it is probably not less clear that he had also a lien for the general balance of his insurance account against Spurr, who, at that time, was the only principal known to him in the transaction.
This general doctrine, declared by Lord Hardwicke, in equity, in Kruger v. Wlcox, (Ambler 252) in 1755, and since then well settled at law, we do not understand to be controverted by the plaintiff’s counsel. (Man v. Shiffner, 2 East. 523; Mann v. Forrester, 4 Camp. 60; Westwood v. Bell, ib. 352; Story on Agency, p. 354; and cases cited in notes. Cross on Lien, 277, and onward. 2 Kent Com. 634, &c.; 2 Duer on Ins. 280, &c., § 1, 2.)
It does not, however, appear in the case, that down to the time when these policies were sent to Liverpool, any sum whatever was due to the defendant from Spurr. The insurance was effected in or about April, 1853. Prior to December in that year, the defendant sent the policies to Spurr in Liverpool. The proof and the finding of the jury is, that in November, 1854, there was a balance due to the defendant, but when it arose does not appear. Spurr testifies that he and the defendant in their dealings kept their accounts as nearly square as possible. That the defendant was always authorized to draw for anything he might be called upon to pay on Spurr’s account here. And also, that he thinks nothing was due to the defendant for the premiums on these policies.
So that it does not appear that when the defendant sent the policies to Spurr, he had any lien thereon.
But however that may have been, when the defendant parted with the possession of the policies, and they came into the hands of Spurr, they were not subject to any lien in favor of the *566 defendant; if any had existed it was gone. (See the authorities above cited, and Story on Agency, § 367.)
.After the loss occurred, the policies were returned to the defendant for collection. It may be conceded that the general rule is, that where an insurance broker, having a lien, parts with the possession of the policies and so loses his lien, his lien will, in the language of the books, be revived, if the policies come again to his possession.—Amb. 254; Cross, p. 280; and cases above and below cited Levy v. Barnard, 8 Taunt. 149.
But in regard to this revival of the lien it is to be observed, that it is not, in strictness, a revival of a pre-existing lien. The doctrine is this: when the policies come again into the broker’s possession, a lien attaches, as it would upon new policies coming into his hands. Hot, therefore, because he once had a lien, which was temporarily suspended, but because, by the general rule, he has a lien upon the securities in his possession for advances made upon account thereof, or as the case may be, for his general balance. This distinction is important, because from it results this qualification—that his lien will not attach if, when they are so returned to him, circumstances have so occurred that no lien for his general balance would attach if they then for the first time came to his hands. In the language of Mr. Justice Story, in substance, his lien will not re-attach to the property, unless when it comes again into his possession, it comes as the property of the same owner against whom his right exists, and no new intermediate equities have affected it.—§ 470, and cases referred to.
If, therefore, the defendant received the policies for collection, and was then apprised that the present plaintiff was the owner, no lien in favor of the defendant would attach for a prior balance against Spurr, if any existed at that time, which, as before observed, does not appear. And it is equally, if not more clearly true, ‘that he could acquire no lien, as against the plaintiff, for a general balance subsequently arising between him and Spurr. This principle will be found stated in the elementary works above referred to, and in Paley on Agency, 145, and note 15, p. 148; Law Library edition, pp. 63-4; Houghton v. Matthews, 3 Bos. and Pul. 485; Mann v. Shiffner, 2 East. 523; Jarvis v. Rogers, 15 Mass. 396; Foster v. Hoyt, 2 Johns. Ca. 327; 2 Duer on Ins. 282, § 3.
*567 We are therefore of opinion that in this case no lien in favor of the defendant attached to these policies when they were returned to him for collection, not only because it was not shown that anything was then due to him, but also because that when so returned, the ownership of the plaintiff was disclosed. And for that reason, also, no subsequent transactions with Spurr, creating a balance, would create a lien on the policies to the prejudice of the plaintiff.
So, also, on the 15th June, 1854, by letter of May 31st, the defendant was distinctly notified by the plaintiff that he was owner, and that although the policies were in the name of Spurr, the interest is altogether in the plaintiff. It is not shown that at this time anything was due by Spurr to the defendant, and of course the above observations apply to this date, and to the notice then given.
The defendant, therefore, had no lien upon these policies for the balance of his account with Spurr on the 17th of November, 1854, and is therefore not entitled to have that balance deducted from the verdict.
As before observed, this seems to dispose of the only questions of law which appear by the case to have been raised on the trial, and the questions subject to which the verdict was taken.
The case was argued before us as if every question of fact and ■ law which can now be raised upon the case, as made up for argument, might be considered; and notwithstanding we think that in strictness the case is to be disposed of, as above intimated, we have considered the other points and arguments, ingeniously and ably urged upon our attention.
At the time of the demand made upon the defendant, the plaintiff was entitled to the policies. The fact that he owned only ffths of the Jenny Lind did not affect his title to the policy. The policy protected his interest. The case does not show that his co-owner was in any wise protected. The insurance was for account of whom it may concern, but those terms are always controlled by proof of the parties for whose benefit the insurance was in fact intended, and it in no wise appears that the co-owner was interested in the policy, or was in any wise intended to be protected by it Indeed, we do not fully understand upon what *568 principle it is that the recovery here was claimed by the complaint, and so on the trial taken to be limited to ff-ths of the amount of the policy. If the interest of the plaintiff and his loss amounted to the whole sum insured, the reason for supposing that he could not have recovered the whole amount of the policy in his own name is not apparent. In The Pacific Insurance Co. v. Catlett (1 Wend. 561, and S. C. in Error, 4 Wend. 75), where an insurance was expressed to be “on account of the owners,” the plaintiff, by whose orders and for whose benefit the insurance was effected, was held entitled to recover the full sum insured, although it appeared that, in truth, he only owned five-sixths of the vessel. (See S. C. 1 Paine’s U. S. Dist. Ct. Rep.) At all events, the plaintiff had a clear right to demand possession of the policy. But as to this particular policy, there is a conclusive answer to the alleged defect in the demand. ‘ The defendant, before this suit was brought, had wrongfully surrendered the policy, and no demand was necessary. He had violated his duty as agent, or broker. He had done what the plaintiff had a right to regard as an actual conversion of the policy. And this meets another suggestion, viz. that the plaintiff was only entitled to recover the amount at which the defendant compromised' with the Company. He had no authority, either express or implied, to make the compromise. The act was not only without authority, but was a tortious act, done in defiance of the plaintiff and with knowledge of his claims.
And as to the other policy, which appeared on the trial to have been sued upon and judgment recovered, it may be that if on the demand being made the defendant had disclosed the fact, the form of the present action would have required amendment.. But we think that the evidence shows an actual conversion of this policy to the defendant’s use. He sued it in his own name. He refused to give any account of it to the agent of the plaintiff—would give no explanations—concealed the fact that he had recovered a judgment—and finally treats that judgment as his own, and after a stipulation by his attorney not to enforce it, save by adjusting it with other claims by the receiver, sets it up as a set-off against such claims. Under such circumstances we think the demand sufficient, and the conversion proved. We could not, we think, hold that the *569 plaintiff, under the circumstances stated, had npt done all which he was bound to do to sustain the action.
It is true that the answer setting up this judgment as a set-off against claims upon the defendant personally, was put in after this action was commenced, but it was read without objection, and it showed how fully the defendant was exercising acts of ownership over the claim, in defiance of the plaintiff, and gives character to the acts, concealments, and refusals of the defendant, which were prior to the bringing of this action.
To this suggestion may be further added, on the subject of the defendant’s claim to a lien, and that its amount should have been tendered—that his refusal to furnish any account, or give any information, may well be taken to have rendered a tender impossible, and so to have waived any tender.
And we have no doubt that the amount of the policies being upon the evidence prima facie due, that amount is, in the absence of countervailing testimony, to be taken as the measure of damages. They had bec'ome, in substance, securities for the payment of a definite sum of money, and were presumptively of that value. The defendant had no right, by unauthorized compromise, or by setting off against what he himself owed, to deprive the plaintiff of his whole opportunity to collect them.
Our conclusion is, that judgment should be ordered for the plaintiff upon the verdict.