## BENJAMIN COLLINS *vs.* CHARLESTOWN MUTUAL FIRE INSURANCE COMPANY.

Two partners, in an application for insurance on a building, which was required to contain "a full, fair and substantially a true representation of all the facts and circumstances respecting the property, so far as they are within the knowledge of the assured and are material to the risk," stated that they owned the land on which it stood. In fact, one of them, to whom the policy was made payable, owned it, and the other was charged on their books with half its cost. The partnership was afterwards dissolved, and all that owner's interest in its assets transferred to his copartner, to whom the insurers, with notice of the facts, agreed that the policy should "stand good." *Held*, that the insurers were liable for a loss by a subsequent fire.

A description in an application for insurance of a building as used " for the manufacture of lead pipe," or " of lead pipe only," includes the manufacture of wooden reels on which to coil the lead pipe, if essential to the reasonable and proper carrying on of the business of manufacturing lead pipe.

THOMAS, J. This is an action of contract upon a policy of insurance on a lead mill. The parties insured were Benjamin Collins and George L. Stearns, partners under the firm of Collins & Stearns. Collins, the plaintiff, is a mortgagee of the premises, to whom the policy was payable in case of loss. The making of the policy and the loss by fire within the term being admitted, the defendants rely upon two grounds of defence. First, that there was a misrepresentation in the application of the assured as to the title of the estate. Secondly, a representation and warranty as to the use to which the building was then and should be thereafter applied, and a breach of that warranty and representation.

1. The estate was conveyed by deed to George L. Stearns, one of the partners. The legal title was in him. In the application, signed by Collins & Stearns, in answer to the question, " Do you own the land upon which the buildings stand ? " the answer is, " Yes." The policy secures a lien upon the land and buildings. One of the provisions of the by-laws is, that " the policy shall become void and of no effect, if the application shall not contain a full, fair and substantially a true representation of all the facts and circumstances respecting the property, so far as they are within the knowledge of the assured and are material to the risk."

So far as respects the lien, the insurance company is not affected. The property is owned by one of the parties to the note. Each partner is liable *in solido*. The lien is therefore perfect. Nor is it easy to see how it was material to the risk whether the title to the estate was in one or both the partners.

But though the legal title to the land was in one of the partners, the equitable title was in the firm. Stearns held the estate in trust for the partnership. By the written articles of copartnership, Collins was to be charged on the books of the partnership with one half of the cost of the mill. Upon the books of the

partnership, Stearns was credited with the agreed value of the mill. The estate became part of the capital of the firm. It was the property of the firm, though the legal title was in one of the partners only. Such was the state of the title when the application was made. In the statement that Stearns & Collins owned the estate we see no misrepresentation material to the risk.

The case of *Smith* v. *Bowditch Mutual Fire Ins. Co.* 6 Cush. 448, is quite distinct from that at bar. By the 17th article of the by-laws of that company it was provided that any policy issued by the company should be void unless the true title of the insured should be expressed in the application for insurance; and the plaintiff had no legal title to the estate of which he represented himself the owner. He had only a bond for a deed. No lien therefore was secured. Nor was the true title of the insured expressed in the application.

In the case of *Davenport* v. *New England Mutual Ins. Co.* 6 Cush. 340, in answer to the question whether the estate was incumbered, the answer was in the negative, the estate being at the time subject to heavy mortgages. The case of *Bowditch Mutual Fire Ins. Co.* v. *Winslow*, 3 Gray, 431, is to the same point. It goes no further.

In *Allen* v. *Charlestown Mutual Fire Ins. Co.* 5 Gray, 384, the distinction is made between the preceding cases and one in which the statement as to title was substantially correct, and where the difference, if any existed, did not impair the lien of the company or otherwise affect the risk.

But, as if to free the case before us from difficulty, in January 1854 the partnership was dissolved. Collins transferred his interest in all the assets of the partnership to Stearns. The dissolution and conveyance were made known to the insurance company, and on the 24th of March 1852, with full knowledge of the facts, they indorsed on the policy this agreement: "Agreed that this policy shall from this date stand good to George L. Stearns." And we think it does stand good, unless there is force in the second ground of defence, which is misrepresentation of the purpose for which the building was to be used.

2. To the question, " For what purpose occupied, and by whom ? " the answer is, " By the applicants, for the manufacture of lead pipe only."

The defendants offered evidence to show that the attic of the building was used for the manufacture of reels upon which the lead pipe is coiled. But the answer, and we think satisfactory answer, made by the plaintiff was, that the making of the reels upon the premises was a necessary and essential part of the manufacture of lead pipe. The evidence was submitted to the jury under these instructions : " that the term ' manufacture of lead pipe ' would include all that was reasonably necessary and essential for carrying on the business of manufacturing lead pipe in the building insured; that if, for the proper and reasonable carrying on of the business, it was essential to manufacture reels upon the premises, by the machinery and in the manner proved, the representation that the building was used for the manufacture of lead pipe only was sufficient; that the mere fact that it was more economical or convenient to· make reels upon the premises was not sufficient to authorize the insured to make such use of the premises." These instructions seem to us entirely correct.

In this view of the case, the question whether the word " only " was contained in the application becomes immaterial. It does not change the force of the words " manufacture of lead pipe," or exclude anything essential to it.

*Judgment on the verdict for the plaintiff.*

*E. D. Sohier & H. G. Hutchins,* for the defendants, cited, to the first point, *Davenport v. New England Mutual Fire Ins. Co.* 6 Cush. 340 ; *Packard v. Agawam Mutual Fire Ins. Co.* 2 Gray, 334; *Bowditch Mutual Ins. Co.* v. *Winslow,* 3 Gray, 431 ; Parsons Merc. Law, 511, 513, 514 ; *Work v. Merchants' & Farmers' Mutual Fire Ins. Co.* 11 Cush. 271; *Catlett v. Pacific Ins. Co.* 1 Paine, 615, and 1 Wend. 561 ; *Leathers v. Farmers' Mutual Fire Ins. Co.* 4 Foster, 259 ; *Foster v. United States Ins. Co.* 11 Pick. 85.

*W. G. Russell,* for the plaintiff.