Radcliff, J.
Several questions have been made, which may be considered in the following order:
1. Whether the insurance, which was general, can apply exclusively to the interest of the plaintiffs, that being an undivided third part of the cargo ?(a)
2. Whether the defendants are at all liable for the expenses which accrued subsequent to the acquittal, and in prosecuting the appeal for damages?
3. Whether the defendants were not entitled to inspect the letter called for by them, and to elect whether it should be read in evidence ?
4. Whether the expenses in prosecuting the appeal at Cuba were reasonable, and ought to be allowed?
As to the first, I consider it well established in practice, that the assured is not required to state the particular interest, or proportion of interest, which he intends to have insured. It is sufficient if he have an insurable interest to the amount in question. Whether it be a distinct, or an undivided share, cannot be material. It may often be difficult to ascertain his interest with certainty. The owners were at least equitably entitled to their shares in severalty; *361 the interest of each, I, therefore, think, ought to be permitted to be severally enforced. In the present case it appears that the insurance was in fact so intended, and a witness, who was one of the partners, testified that the plaintiffs had no authority to insure except on their own account. The danger of fraud from this practice, I think is remote, and less to be apprehended than the inconveniences which may arise from a contrary rule.
2. As to the second objection, I see no reason why the defendants should not be liable for the expenses attending the prosecution of the appeal in Cuba, which was conducted with good faith and for their benefit. I am informed that it was decided by this court in April, 1795, in the case of Smith v. Scott, that an assurer is liable for similar expenses, beyond the amount of his ^subscription, [*285] and I believe that the underwriters have in practice, uniformly acknowledged their liability.(a) The appeal in the present case, I think, was justifiable. The captain was condemned in costs amounting to about 1,500 dollars, one-third of his cargo was plundered, and the vessel stripped of everything necessary to her equipment. The restoration of the vessel and cargo in that condition, was a little better ';han a total loss. There is no direct evidence that the defendants afterwards had notice of the -proceedings, but' I think it may be fairly presumed. The capture was well known to them; an abandonment was made, and the proceedings were frequently a subject of conversation between other underwriters on the same policy. The defendants did business in the sam'e coffee-house with those underwriters, and though in a different room, it is proved that it is usual for underwriters on the same risk to communicate to each *362 other the information they receive. From these circumstances, I think actual notice to the defendants may be presumed; if, then, they had notice, and did not signify their dissent, they ought clearly to be held liable to the result.
3. As to the third point, I see no reason to change the' opinion I entertained at the trial. A party who gives notice to produce a paper in evidence, must be supposed to know its contents. If he does not, he ought not to be permitted to speculate through the forms of law, and obtain from his adversary the inspection of any paper or document he may choose to demand. Such a privilege would be liable to abuse, and, I think, neither correct in principle, nor consistent with the form of proceeding in such cases. The notice to produce a paper, requires it to be produced in evidence, and when once called for and produced, it is of course in evidence, and I think it cannot be called for on any other terms. I understand this to have been the practice of our own courts, and no question has arisen upon it to my knowledge, until a late decision of Lord Kenyon at nisi prim, which suggested the idea now maintained by the defendants’ counsel. Sayer v. Kitchen, 1 Esp. Cases, p. 210. It may be .questioned whether the point decided in that case, is similar to the present. Without examin[*286] ing *this, it was an opinion at nisi prius, and of itself no authority; and in addition to what has been said, I think the alternative that the party giving the notice, if the paper be not produced, may go into evidence of its contents, shows not only that he must be supposed to be apprised of them, but that he cannot have it in his power to compel a previous inspection. If the paper be refused or withheld, he can do no more than give inferior evidence respecting it; Neither the court nor the party can enforce its production for the purpose of inspection, or any other purpose.
4. Whether the expenditures in prosecuting the appeal in the island of Cuba, were reasonable and proper, under *363 the circumstances of the captors’ situation there, was distinctly submitted to the jury, and if extravagant or improper, they were directed to make such deductions as in their opinion should appear reasonable. They have, in fact, made a considerable deduction, and I cannot say that they have not done right, or ought to have deducted more.
I am, therefore, of opinion, on all the points, that the plaintiffs are entitled to recover according to the verdict as it stands.
Thompson, J.
I concur in the opinion given, except as to the third point. I am inclined to think the defendants were entitled to an inspection of the letter they had given notice to produce, without stipulating that they would afterwards read it in evidence. The practice of giving notice to produce papers, as in the present case, has been introduced to save the expense of going into chancery for a discovery, and I can see no good reason why the party ought not to be entitled to all the advantages he would have, had he resorted to his bill in equity. In that case, after a discovery, he might exercise his discretion whether to use it as evidence or not. I do not think this right of inspection would be liable to the abuses suggested by the plaintiffs’ counsel, that it might lead to an impertinent inspection of papers having no relevancy to the controversy. The party calling for the paper, must appear in the first instance, to have an interest in, and right to, it; he must give notice to produce it. This notice must contain % description of the paper with convenient [*287] certainty, and it must be proved to be in the possession of the opposite party; after which it would be competent for the party having the paper, to object against the introduction, or the proof of its contents, as being illegal or irrelevant, in the same manner as if the party calling for the paper had been in possession of it, or as might be done with respect to every other piece of testimony. To require a stipulation, at all events, that the paper should be read in *364 evidence, might, in many cases, compel a party to introduce testimony against himself. This would be unreasonable, and I think liable to much greater abuse than permitting a previous inspection. So far as the decision of Lord Kenyon ought to have influence on determining this question, we have it in the case of Sayer v. Kitchen, at nisi prius, 1 Esp. Oases, 209. The defendant had given notice to the plaintiff to produce his books, and after having inspected them, declined using them as evidence. The plaintiffs’ counsel then insisted, that the defendant having called for the books, they were in evidence before the jury. But■ Lord Kenyon said, it did not make them evidence; that if the counsel on one side called for the other’s books, and made no use of them, that it was only matter of observation" to the counsel on the other side, that the entries there were in favor of his client, but did not entitle him to use them in evidence. Although .this decision is in no way binding on this court, yet I think the rule there laid down, is founded in good sense, and best calculated to answer the ends of justice, and, therefore, proper to be adopted. Had the plaintiffs in the present case, entirely refused to produce the letter, there can be no doubt the court could not compel a specific compliance with the notice, but could only have permitted the defendants to go into proof of its contents. The plaintiffs, however, admitted they had the letter, and made no objections against delivering it to the defendants, provided they would stipulate at all events to read it in evidence, which they refused to do before they had inspected it, "and the court decided that the defendants were not entitled to inspect the letter, unless they .[*288] would *afterwards read it in evidence. I think the judge ought to have said to the plaintiffs, if you have a letter, and intend to produce it, the defendants have a right to inspect it, and thus make their election whether to read it in evidence or not.(a) If you refuse tc *365 produce it, the defendants will have a right to go into proof of its contents.
Lewis, Ch. J.
concurred, and on the third point said, he did not consider there was any essential difference between the opinion of Thompson, J. and that delivered by Mr Justice Radcliff.
Kent and Livingston,
Justices, gave no opinion, the former not having heard the argument, and the latter hay lug been of counsel in the cause.
New trial denied.

 See Lawrence v. Sebor, 2 Caines’ Rep. 208, n.

 Watson v. Marine Insurance Company, 7 Johns. Rep. 62, S. P. And in the expenses of labor, &c., may be included those of wharfage and selling the ship. McBride v. Mmine Insurance Compmy, 1 Johns. Rep. 431. But under this clause by which these expenses are recoverable, the assured, or their agents, are not hound to appeal. Gardere v. Columbian Insurance Company, 7 Johns. Rep. 514.

 Decided according to this. Kenny v. Van Horne & Clarkson, 1 Johns Rep. 395.