## E. Harrison Austin *v.* Robert Thomson.

The plaintiff, while testifying, produced his deceased father's rent book upon the request of the defendant's counsel: *Held* that the mere inspection of the book by the defendant's counsel did not make it evidence for the plaintiff.

Entries by A., a deceased land-owner, upon his rent book, charging B. and C. with the rent of certain premises, and crediting them with the payment of the same, are not evidence of a tenancy by B, for the heir of A., in a suit brought by the heir for rent of the same premises against B., who continued to occupy them with C. after the death of A.

A party is not estopped by his declaration as against one who has not been thereby induced to take or neglect any action or in any way alter his situation.

An arrangement between B. and C. for "mutually keeping house," by which C. is to pay the house rent and butchers' bill, and B. is to pay the other bills for the family expenses, does not, as matter of law, make B. and C. partners, or authorize C. to bind B. to third parties for the rent.

Where a tenant at will from year to year lets a portion of the premises held by him to another as his tenant at will, the latter is his under-tenant and not his assignee.

One, who is tenant strictly at will, has no assignable interest in the premises of which he is such tenant.

Where C. holds certain premises as tenant at will under A., the mere fact of B's entry upon, and occupation of, a portion of the premises by permission of C., does not necessarily make B. a tenant of A.

Indebitatus Assumpsit. The writ was dated January 2, 1863.

The first count was in common form for use and occupation of a dwelling house. The second count was as follows: "For that the defendant, and one Oliver L. Reynolds, now deceased, whom the defendant has survived, at Dover aforesaid, on the first day of May, 1862, in the lifetime of said Reynolds, being indebted to the plaintiff in the further and other sum of five hundred dollars for the use and occupation of a certain dwelling house of the plaintiff, situate in Dover, with the appurtenances for a long time used and occupied by said defendant and said Reynolds, at their request, by the permission of the plaintiff, promised to pay him that sum; yet though requested, neither said defendant and said Reynolds, in the lifetime of said Reynolds, nor either of them, nor said defendant since the decease of said Reynolds,· ever paid the same, but," &c.

The case was tried by the court upon the general issue, and the court found the following facts:—

The plaintiff testified that the defendant occupied one-half of a house, and Reynolds the other half, from December 31, 1859 to May 1, 1862; that he believed their families dined together; that a short time before April 4, 1862, he wrote a letter to defendant, requesting him to leave the house, and received an answer; that defendant left the house in May, 1862. The following is a copy of said answer:—

"DOVER, April 4th, 1862.

*Sir*:—I received your VERY POLITE note and beg to say, I shall remove from the tenement at present occupied by me, within the *legal* time allowed; although a matter of some inconvenience to my family, after having occupied it for sixteen years and upwards, at so short notice! ! !                    Yours, Very Respectfully,

ROBERT THOMSON."

It was admitted that plaintiff owned the house from December 31, 1859 to said May 1, 1862, and that $230 would be a reasonable rent for one-half of the house for that time.

The court overruled a motion for a nonsuit upon this evidence, and defendant excepted. The plaintiff then testified that Reynolds died in July, 1862.

On cross examination plaintiff testified that he never had any conversation or communication with defendant, about the house or the rent, except said letter and answer; that plaintiff's father died in 1857. Defendant's counsel asked the plaintiff if he ever had an idea that defendant was his tenant, and plaintiff answered that he had. Defendant's counsel asked plaintiff how he got such an idea, and plaintiff answered, from his father's book. Defendant's counsel asked what book? Plaintiff replied, his father's rent book. Defendant's counsel asked him to produce it. Plaintiff produced the book, and passed it to defendant's counsel, who examined it. Plaintiff testified, on direct examination resumed, that pages 8 and 27, in said book were in his father's handwriting, and that he found it among his father's papers.

Plaintiff then offered the memoranda on pages 8 and 27, in evidence. The court admitted them, and defendant excepted. Page 8 of said book is as follows:

| Dr. Robert Thompson & | Cr. | |
|---|---|---|
| Oliver L Reynolds D | By cash | 55,55 |
| Septr     to House Rent from | in full for House Rent | |
| 20          this time at $200. per | up to first of Jany | |
| 1846       year & water Bill | 1, 1847 | |
| Rent paid up to Jan'y 1, | 1847 | |
| 1849 | Apl 7 By  cash by the | |
| 1853 Feby 15 | hand of | 50.00 |
| this day settled in full | Tobias Evans | |
| for House Rent | July 6th By cash . | 50.00 |
| | 1850 | |
| | Octr By cash $200 | 200. |

                                        Rec'pted for
                                    . 1853
                                        Feby 15 By note to Ballance
                                        the above account for Rent
                                        and we also made a settle-
                                        -ment about repairs on
                                        house & settled about Horses &
                                        Waggon at the same time
                                        Rent paid up to Apl 1, 1853.
Page 27 of said book is as follows :
        1853 Robert Thompson and O. L. Reynolds to E Austin ·D
        April 1 To House Rent from this time at $200 per year
                        1853 Septr. 21. By cash
                        pr Recd of Dr Thompson                40.00
                        1855 By paid by the hand
                                of George Matherson in note 200.00

The plaintiff's father, Elijah Austin, who formerly owned the house,
died in 1857, when it passed by descent to the plaintiff, who came of
age December 31, 1859.

The defendant and said Reynolds, who was a nephew of said Elijah,
occupied the house for about 16 years prior to May, 1862, when ·the
defendant left it at the plaintiff's request. The plaintiff claimed the right
to recover $460, as the rent of the whole house from December 31,
1859 to May 1, 1862, but asked the court to assess damages only in
the sum of $230, as the rent of one-half of the house, or one-half of the
rent of the whole house, for that time, and if the plaintiff is entitled to
recover anything the court assess the damages at $230 and interest from
the date of the writ.

The defendant and his family occupied the easterly half of the house,
and said Reynolds and his family occupied the westerly half, but both
families took their meals together at the same table. The parol contract
for hiring the house was made by said Reynolds and Elijah Austin,
and, they both being dead, it did not appear what that contract was, ex-
cept as it might be inferred from circumstances. It was understood be-
tween Reynolds and the defendant that Reynolds should pay the rent of
the whole house, should pay the butchers' bills, and the defendant was
to pay other bills.

Subject to the plaintiff's exception, the defendant introduced in evidence
a release, of which the following is a copy :

"Whereas, the undersigned have for many years past, in the exercise
of friendly relations, contributed mutually to the expenses of each other's
family and have had a free and friendly interchange of borrowing and
lending, and have kept no account thereof minutely, but are mutually sat--
isfied to consider each free of any liability to the other therefor, and are
desirous of settling the same, so that hereafter there may be no investi-
gations on the subject of debtor and creditor in relation thereto between
them : Now, therefore, we do each hereby mutually release to the other

all debts, dues and demands, and claims of every nature which the one has upon the other, and we do agree that this shall be a final settlement of all matters between us from the beginning of the world to the present time.

In witness whereof we have hereto set our hands and seals, this first day of January, A. D., 1861.

O. L. REYNOLDS,          (seal.)

ROBERT THOMSON,          (seal.)"

After the date of said release, said Reynolds and defendant continued to live and conduct their affairs as before, and never had any other settlement. Defendant testified, subject to plaintiff's exception, that he occupied one-half of the house at Reynolds' request, and never had any talk with the plaintiff, or his father, about the house or rent; that defendant attended Elijah Austin and his family as physician at intervals during the time he occupied the house and presented bills for services, which were paid; that neither plaintiff nor his father ever demanded rent of him, and that he never paid any rent to either of them; that he and Reynolds had an arrangement for mutually keeping house, that Reynolds paid the most towards their expenses at first and defendant paid the most afterwards; that on one occasion when Elijah Austin was at dinner at said house with defendant and Reynolds, said Elijah asked Reynolds for money, that Reynolds said he had none and asked defendant if he had some, that defendant said he had $40 at his office, that Reynolds told Elijah to call at defendant's office for it, that Elijah did so call and defendant paid him $40; that defendant understood he was lending the money to Reynolds. Defendant further testified, subject to plaintiff's exception that by the word "legal" in his answer to plaintiff's letter he meant twelve months notice, as Reynolds told him not to go, as he was Reynolds' tenant; that he showed plaintiff's letter to Reynolds who told him to take no notice of it as he was Reynolds' tenant, and plaintiff could not get him out for a year.

The original papers and rent book used at the trial are made a part of the case.

The questions of law arising upon the foregoing case were reserved.

*Jeremiah Smith*, for the plaintiff.

*James D. Thompson*, for the defendant.

BARTLETT, J. The defendant's first exception seems properly abandoned, for we think that the denial of the motion for a nonsuit was right.

It has been said that "the production of papers upon notice does not make them evidence in the cause, unless the party calling for them inspects them so as to become acquainted with their contents; in which case the English rule is, that they are evidence for both parties." 1 Greenl. Ev. sec. 563; 1 Stark. Ev. *403; Roscoe Ev. 6. Phillips, however, merely states that it has been so held, 2 Phill. Ev. (3d Am.

Ed.) 222; while Tidd says that an inspection of papers by the party calling for them does not make them evidence for the other party. 2 Tidd Pr. 737. The only reason given for the supposed rule is, "that it would give an unconscionable advantage to enable a party to pry into the affairs of his adversary, for the purpose of compelling him to furnish evidence against himself, without at the same time subjecting him to the risk of making whatever he inspects evidence for both parties." 1 Greenl. Ev. sec. 563. But as the party notified is not obliged to produce the papers, and as he may, if he produce them, decline to allow them to be examined except upon the condition that, if examined, they shall be read in evidence, *Huckins* v. *Ins. Co.*, 31 N. H, 238, parties notified seem amply protected from any such unconscionable advantage, and the reason stated entirely fails; and we see no sufficient reason for a rule that is at variance with the general course of our practice, and that can hardly facilitate the administration of justice, since, if it has any practical effect in addition to the rules for the admission of competent evidence, it must be to compel the court to allow incompetent evidence to go to the jury. See *Gordon* v. *Secretan*, 8 East 548.

The English cases cited do not establish the rule as laid down in the books first quoted. If in *Sayer* v. *Kitchen*, 1 Esp. 210, the defendant inspected the book, as would appear probable from the not very explicit statement of the case as well as from the marginal note, (see *Lawrence* v. *Van Horne*, 1 Caines, 287; 2 Tidd. Pr. 737), that case is an authority against the alleged rule. *Wharam* v. *Routledge*, 5 Esp. 235, and *Calvert* v. *Flowers*, 7 C. & P. 386, in fact go no farther than *Huckins* v. *Insurance Company*, and *Johnson* v. *Gilson*, 4 Esp. 21, is not in point. In *Wilson* v. *Bowie*, 1 C. & P. 8, Parke B., held that the plaintiff having inspected a paper produced under notice was not bound to read it to the jury, it not being material to the case. In some of the cases there are dicta broader than the decisions, but a few such dicta at *nisi prius* can hardly be deemed to have established such a rule. Greenleaf, in the section already cited, says that in the American courts the rule on this subject is not uniform. In a note to Phillips' Evidence, (3d Am. Ed.,) it is said that the principle of the alleged English rule is not clear, and that it seems questionable whether the rule does not go much too far. 2 Phill. Ev. 222 n. 4, and see notes 215 a. and 234. Swift states the rule as it is laid down in Tidd. Swift's Ev. 481. *Lawrence* v. *Van Horne*, if an authority at all, goes no farther than *Huckins* v. *Ins. Co.;* and the same would seem to be true of *Jordan* v. *Wilkins*, 2 Wash. C. C. 482. *Sanders* v. *Duval*, 19 Texas, 467, and *Anderson* v. *Root*, 8 S. & M. 362, are not in point, though the latter case contains a dictum founded upon the supposed English authority. *Randall* v. *Canal*, 1 Harrington, 233, and *Wooten* v. *Nall*, 18 Geo. 609, are said to have followed the supposed English rule; and, in *Penobscot Co.*, v. *Lamson*, 4 Shepl. 233, there is a dictum to the same effect, founded upon the authorities already mentioned, which was afterwards adopted as the law in *Blake* v. *Russ*, 33 Me. 360, but without the statement of any reasons. In *Commonwealth* v. *Davidson*, 1 Cush. 45, the existence of the rule is spoken of as a mooted question,

and that question can hardly be deemed to have been settled in *Reed* v. *Anderson*, 12 Cush. 481 ; but the subsequent case of *Clark* v. *Fletcher*, 1 Allen, 53, seems to have been decided in accordance with the supposed English rule, and for substantially the same reason that is stated in 1 Greenl. Ev. sec. 563. In *Kenney* v. *Clarkson*, 1 Johnson, 395, and in *Withers* v. *Gillespy*, 7 S. & R. 14, it is denied that the law is in accordance with the supposed English rule. There is, therefore, no such weight of authority as should lead us to adopt a rule which does not commend itself to our judgment, and is not in accordance with our practice in analogous cases.

It becomes unnecessary for us, entertaining these views, to inquire if any sound distinction under the alleged English rule could have been founded upon the fact that the book here was not produced under a formal notice. See *Bank* v. *Israel*, 6 S. & R. 293. Here the plaintiff, being a witness, produced his father's book, upon request, and we perceive no reason why any different rule in this respect should be applied to him from that applied to other witnesses. We are, therefore, of opinion that the inspection of the book by the defendant's counsel did not make it evidence for the plaintiff.

But the plaintiff claims that the entries on the book were competent as entries made by Elijah Austin against his interest. We do not find it necessary to inquire how far entries against the interest of the person making them, merely as such, are competent evidence ; (See 1 Greenl. Ev. sec. 147—154 ; 1 Phill. Ev. 293 *et seq.* ; 3 C. & H., notes 258 ; 2 Smith, L. C. *183 and 283 ; *Hinkley* v. *Davis*, 6 N. H. 212) ; for we do not think that the entries offered were such upon the authorities. The plaintiff claimed that the defendant was tenant under him, while the defendant claimed that he was not tenant of the plaintiff, but occupied under Reynolds. Among other things, to show a tenancy under himself, the plaintiff proposed to show that the defendant was tenant of Elijah Austin, whose estate had descended to plaintiff, and that the defendant continued to occupy the premises after the death of Elijah, no change in the nature or terms of his occupancy appearing. He offers these entries to show that the defendant and Reynolds paid rent for the premises to Elijah Austin, in order to show that they were tenants under Elijah. This case differs from *Higham* v. *Ridgway*, 10 East, 109 ; for the entry there could not have tended to establish any existing or continuing right in Hewitt. If the entry tended to show a sum of money due Hewitt, it at the same time showed its payment, and it tended to show nothing else in Hewitt's favor, while there was other evidence that he actually rendered the services charged. So in the cases of entries of the receipt of rent or toll in the books of deceased bailiffs and receivers, the entry is evidence of their liability for the rent, &c., to their employer, but tends to establish no right or interest in themselves ; and some proof of their agency is ordinarily given. 1 Greenl. Ev. sec. 154. Here, although, so far as the entry admits the receipt by Elijah of a sum of money to which he was apparently entitled, it would seem to have been against his interest, yet its effect is not limited to this ; it tends to show Elijah's seizin of the land, and also the tenancy of Reynolds and defend-

ant; and certainly the former, if not the latter also, was in favor of Elijah's interest. *Outram* v. *Morewood*, 5 T. R. 121; 1 Phill. Ev. 306; 1 Greenl. Ev. sec. 149; 2 Smith's L. C. *193. This view is not affected by the present admission of Elijah's seizin, for the question would be, what was his interest at the time he made the entry; 1 Greenl. Ev. sec. 147; *Melvin* v. *Marshall*, 22 N. H. 382. It does not follow, because his seizin is now and here admitted, that it was or would be elsewhere, or at any other time; nor would the fact of his seizin take away his interest to make an entry tending to prove it, which would, according to the theory on which this evidence is offered, be evidence after his decease for those claiming under him. One seized of land cannot thus make evidence for those that shall claim under him. 1 Phill. Ev. 296; 3 C. & H's notes, 289, 340; 1 Greenl. Ev. sec. 155; see *Batchelder* v. *Sanborn*, 22 N. H. 334. *Spiers* v. *Morris*, 9 Bingh. 687, is not an authority for the admission of the book here; for there the admissibility of the entries was put expressly upon the ground that they were made by the deceased, not as landlord, but as executor bound to account for the rents received. 1 Phill. Ev. 306; 1 Stark. Ev. 359. The admission of the books of deceased rectors and vicars in favor of their successors is put upon peculiar grounds that can have no applicability here. 1 Greenl. Ev. sec. 155; 1 Phill. Ev. 307, *et seq.* No case has been cited by the plaintiff, where entries merely, like those in question here, have been admitted, yet if the law were as he contends, it could hardly have happened that such evidence should not have been often used. No other ground is suggested for the admissibility of the entries, and we think that they should not have been received.

The declarations of Reynolds to the defendant at the time the plaintiff's letter was shown to him, were incompetent. The release executed by Reynolds and the defendant, seems to us immaterial to the issue on trial; and we do not see how it was material whether the defendant, in his letter, by "legal time" meant twelve months or any other length of time.

The arrangement between the defendant and Reynolds did not make them partners, for it provided for no "joint and mutual interest in the profits;" Story Part. secs. 23, 182; *Bromley* v. *Elliot*, 38 N. H. 309. Indeed the arrangement appears to have been with no view to the acquisition of profits, or to the transaction of any business by which profits were to be earned. If, as suggested by the plaintiff, the arrangement was made for the purpose of lessening their household expenses, still it would not make them partners. In effect it seems that each was to furnish certain provision for the use of the families and not for the negotiation of business; and this would not authorize either to use the credit of or bind the other to third parties for such supplies as he himself was to furnish. If any saving was effected by the arrangement, it was not a joint and mutual profit to be shared between the two, but, on the contrary, if either, upon the payment of the bills which he was to pay, found his household expenses reduced below what they otherwise would have been, the saving was wholly his own and not in any way directly or indirectly to be shared by the other. Under the arrangement

the saving to one might exist with or arise from a loss by the other. Nor did this arrangement give Reynolds authority, as agent or otherwise, to use the defendant's credit or bind him for the payment of house rent; for, from this agreement of Reynolds to pay the rent himself, an authority in him to bind the defendant for the payment of it can hardly be implied by the law.   There is no evidence that Reynolds and the defendant held themselves out as partners, or that the defendant held out Reynolds as his agent with power to use his credit for the rent.   There is nothing in the case from which, as matter of law, an authority in Reynolds to bind the defendant for rent to the owner of the house can be implied.   The defendant is not estopped by his letter to deny that he was tenant of the plaintiff; for, without inquiring if there are other objections to such a claim, it is a sufficient answer that it does not appear that the plaintiff was induced by the letter either to take or neglect any action or to alter in any way his situation.   2 Smith L. C. 532 ; 1 Greenl. Ev. sec. 209.

The plaintiff also claims that the circumstances of the occupation by the defendant were such as to create a liability in him for rent to the plaintiff as matter of law.   If the tenancy created by the agreement between Elijah Austin and Reynolds was such as to have terminated at the death of Elijah, yet from the occupation continued as it was here in the same way, and for such a length of time without objection, and in the absence of evidence of any change in its terms or nature, a jury might have found a continuance of the tenancy upon the same terms and in the same manner as before.   1 Cruise, 243 ; 4 Kent, 112 and 114 ; Woodfall L. & T. 164 ;   Taylor L. & T. sec. 60 ; *Brewer* v. *Knapp*, 1 Pick. 335 ; Co. Lit. (H. & B's) note 383 ; *Norris* v. *Morrill*, 43 N. H. 218.   If by the verbal bargain Reynolds had been tenant from year to year, and by parol had let a portion of the premises to the defendant as his tenant from year to year or at will, the latter would have been an under tenant and not an assignee : *Curtis* v. *Wheeler*, 1 Mood. & Malk. 493 ; *Hayton* v. *Benson*, 14 East, 237 ; *Peirse* v. *Shaw*, 2 Man. & Ry. 418 ; Woodfall L. & T. 181 ; Taylor L. & T. secs. 57, 59, 111 ; and see *Ibbs* v. *Richardson*, 9 A. & E. 849 ; *Oxley* v. *James*, 13 Mee. & W. 209 ; *Pike* v. *Eyre*, 9 B. & C. 909 ; Com. Dig. Estate, H. 1 ; and therefore not liable to the plaintiff for rent. *Dart. Coll.* v. *Clough*, 8 N. H. 29.

But if, as we might be obliged to hold upon the case as stated, Reynolds was a tenant strictly at will, *Currier* v. *Perley*, 24 N. H. 225, still the mere fact of the defendant's occupation under him would not have made the defendant liable for rent to the plaintiff.   He would not be technically an assignee, for Reynolds would have had no assignable interest; *Whittemore* v. *Gibbs*, 24 N. H. 484 ; Taylor L. & T. sec. 62 : 1 Cruise, 244 ; 4 Kent, 114 ; and whatever relations might be created between the original lessor, the lessee at will, and the party entering under the latter by such a transaction, the bare circumstance of the defendant's occupation of part of the premises by permission of Reynolds would not make him a tenant of the plaintiff.   *Robie* v. *Smith*, 8 Shepl. 114 ; see Co. Lit. 57 a ; 1 Cruise, 244 ; *Blunden* v. *Baugh*,

Cro. Car. 302; *Kilwick* v. *Maidman*, 1 Burr. 111; *Little* v. *Pallister*, 4 Greenl. 209; *Campbell* v. *Proctor*, 6 Greenl. 12.

From the facts stated or testified to, it does not result as matter of law that the defendant was tenant of the plaintiff, and, consequently, it remains a question of fact, whether there was any express or implied agreement by which such a tenancy was created.    2 Saund. Pl. & Ev. 890; Woodfall L. & T. 349.    There is no conclusive evidence that Reynolds was in fact authorized to contract for the defendant, or that he used the defendant's name in making the contract for the occupation of the house, or that, if he did, this was known to the defendant; so that the defendant is not shown, as matter of law, to have been bound by a contract made through Reynolds, or by the ratification of any contract made by Reynolds in his name, if any such were made, and whether any such contract and authority or ratification in fact existed is a matter proper to be settled by the jury or the court trying the questions of facts.    It may be remarked in this connection that it does not appear at what time, with reference to the arrangement between Reynolds and Austin, or Reynolds' entry, the defendant's occupation commenced, nor at what time with reference to these facts his agreement with Reynolds was made.

Though the defendant entered under Reynolds, he still might become liable as tenant to the original lessor by contract, which might be express, or implied from facts tending to show that such was the understanding of the parties: *McFarlan* v. *Watson*, 3 Comst. 286; *Doe* v. *Wood*, 14 Mee. & W. 682; *Levi* v. *Lewis*, 6 C. B. 766; *Robie* v. *Smith*; *Peirse* v. *Shaw*; and whether there was any such contract express or implied is a question of fact proper to be settled at the trial term.

*The case must be discharged.*